UNITED STATES of America,
Plaintiff-Appellee,

v.

Dominick BACCOLLO,
Defendant-Appellant.

No. 306, Docket 83–1181.

United States Court of Appeals,
Second Circuit.

Argued Oct. 25, 1983.
Decided Dec. 27, 1983.

Robert Stolz, Asst. U.S. Atty., New York City (Raymond J. Dearie, U.S. Atty., E.D. N.Y., Allyne R. Ross, Asst. U.S. Atty., Brooklyn, N.Y., on brief), for plaintiff-appellee.

Barry E. Shulman, New York City (Andrew A. Bokser, Shulman & Laifer, New York City, on brief), for defendant-appellant.

Before OAKES and KEARSE, Circuit Judges, and WYZANSKI, District Judge.*

WYZANSKI, Senior District Judge.

Defendant Dominick Baccollo appeals from a judgment of conviction of eleven counts charging interstate transportation of stolen motor vehicles (18 U.S.C. § 2312), of six counts charging interstate transportation of fraudulent and forged documents (18 U.S.C. § 2314) and of one count charging conspiracy to commit violations of 18 U.S.C. §§ 2312 and 2314 (18 U.S.C. § 371).

The government contends that this court, without hearing this appeal, should dismiss it. The argument is that the defendant "waived his right to appeal by absconding" while the jury was deliberating its verdict; and that if the defendant's appeal were to be successful there would be placed an unfair burden on the government because it would be forced to retry a complicated and lengthy case largely dependent on the testimony of "accomplice" witnesses who might not be available due to delays attributable to the flight of the defendant.

From the docket entries in the district court we glean the following facts. On March 27, 1981 the defendant was present when the jury retired for deliberations. On March 28 when the case was called the defendant was not present. Nor was he on March 29 when the jury returned its verdict. On May 15 District Judge Mishler officially declared that the defendant "is a fugitive." On June 8 the government moved for the forfeiture of the defendant's bail. On June 26, the defendant being still absent, the court granted that motion. On August 6 the court declared forfeit the defendant's surety bond; and on August 11 the court entered judgment of forfeiture. Nearly two years later, on May 5, 1983 when the court called the case, the defendant was present and the court remanded the defendant to custody. On May 19, 1983 the court imposed the sentence from which the defendant on the same day appealed to this court. That May 19, 1983 appeal is the matter now before us.

Quite clearly this case is technically at least, and also, no doubt, on some aspects of policy, distinguishable from the garden-variety of case—of which the prototype is *Molinaro v. New Jersey,* 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970)—where the government seeks to have the defendant's appeal dismissed because *after* the trial court imposed sentence, thus entering judgment, the defendant absconded and either remains a fugitive, or since his flight has voluntarily returned to court, or has been arrested and taken into custody.

Here we are dealing with a defendant who has never been a fugitive *since* he was sentenced in the form of the judgment which is here on appeal. Therefore our only concern is whether an appellate court has power to dismiss an appeal on account of appellant's conduct before judgment was

---

* The Honorable Charles Edward Wyzanski, Jr. of the United States District Court for the District of Massachusetts, sitting by designation.

entered, and if so whether, on the facts of this case, we should, as a matter of judicial discretion, exercise such power.

Some—though not all—of the reasons why it has been held that a federal appellate court may dismiss an appeal from a *federal* district court's judgment embodying a criminal sentence where it appears that the defendant has absconded between the date of the district court's judgment and the date assigned for the hearing of his appeal in the appellate court are relevant to the present case. It is, for example, clear that the two-year deliberate flight and absence of defendant Baccollo would gravely prejudice the government were the defendant successful on his appeal. Had the defendant not absconded, the district court presumably would have sentenced him within a month or so after the jury's March 29, 1981 verdict, presumably the defendant would have appealed to this court before the summer of 1981, and presumably we would have heard this case two years earlier than we actually have heard it. During the lost two years witnesses, through death *or other cause,* and other evidence may have become unavailable to the government.

We are aware that the defendant's deliberate defiance of the district court deserves punishment. We are also mindful that there are or were available other customary remedies (such as punishment for contempt), and that they may be more suitable than is the loss of the right to appeal on the ground of pre-judgment conduct.

While we recognize that the defendant has no *constitutional* right of an appeal— *Abney v. United States,* 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977)— we see no necessity for us in the present case to decide an issue apparently of first impression; that is, whether an appellate court has inherent power to deny an appeal on the ground that *before* the district court entered its judgment the would-be appellant both *absconded* from the district court and *was returned* to that court by arresting officers.

■ It is enough for us to rule, as we do, that if this court does have the power to dismiss this appeal on the ground of the past fugitive status of the defendant, we, as a matter of discretion, decline in this particular case to exercise that power. Our reason is that on the merits, the appeal is so plainly frivolous that we prefer to dispose of the case on that ground. We see no reason to risk the possibility of error which, by definition, would be inherent in any case of first impression. No more than others do prudent courts unnecessarily go out on a limb.

We now turn to the defendant's contentions, which we deal with in what seems to us a more satisfactory order than the one employed by counsel. We first consider the sixteen so-called substantive counts, on each of which the defendant was convicted of a violation of either 18 U.S.C. § 2312 or 18 U.S.C. § 2314. The defendant does not suggest, nor could he plausibly have suggested, that there was lacking ample evidence to warrant conviction on each of those counts. Hence we shall not pause to summarize the testimony.

■ The first point upon which the defendant bases his appeal is that the government failed to supply in advance of the trial a list of the witnesses upon whom it would rely. However, two weeks in advance of the trial, the government on February 16, 1981 gave to the district judge and to the defendant a letter setting forth, among other reasons for not submitting a witness list, that six of the expected parties or witnesses had apparently been murdered or had inexplicably died since the investigation of this case began. Clearly it was within the discretion of the district judge to excuse the prosecution from any obligation to furnish a witness list. *Cf. United States v. Cannone,* 528 F.2d 296 (2d Cir.1975). Furthermore, we note (1) that the defendant does not claim that he actually was ignorant of those who would testify against him, (2) that the prosecutrix in her opening statement disclosed the names of the witnesses more than *a fortnight before they testified* against the defendant, and (3) that the only

prejudice asserted by defendant is that his counsel in connection with his opening statement was handicapped because he had learned the names of the witnesses only shortly before he spoke. Obviously, the defendant's point has no merit.

■ The second point upon which the defendant bases his appeal on the substantive counts is that *some* of those counts rest in part upon the in-court identification of him by Joseph Bennett and Nicholas Luberto. Each of those persons had been shown about four years before the trial in an out-of-court identification proceeding a photograph of the defendant; and the defendant alleges that it was a reversible error for the district judge to permit those witnesses to make an in-court identification before the court conducted a *voir dire.*

To that point there are many adequate answers, each sufficient in itself. Neither of the challenged witnesses rested his in-court identification solely or, so far as it appears, even to any substantial extent upon the four-year-old out-of-court identification. Each of them had seen the defendant in person and in action at approximately the time of the violations charged in the indictment. The identification of the defendant in connection with the counts as to which the challenged witnesses testified was far from being the only evidence to link the defendant with those counts; at least four other witnesses made the linkage and little was added by the challenged witnesses.

We conclude, therefore, that this is not a case which required pre-trial or *voir dire* proceedings before the witnesses made their in-court identifications. *Cf. Watkins v. Sowders,* 449 U.S. 341, 349, 101 S.Ct. 654, 659, 66 L.Ed.2d 549 (1981). Nor does the defendant show that even if a *voir dire* had been held, the procedures followed by the prosecution were impermissibly suggestive. *Cf. Simmons v. United States,* 390 U.S. 377, 383–384, 88 S.Ct. 967, 970–971, 19 L.Ed.2d 1247 (1968); *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). Finally, the defendant has failed to

show that he was prejudiced by the challenged testimony.

■ Defendant's third point with respect to the substantive counts is that the district judge permitted the prosecution to introduce as evidence charts on which there was represented primary evidence which was offered by the prosecution and admitted by the court. The admissibility of such charts provided their function is explained to the jury, as it was in this case by Judge Mishler, has long been recognized. *United States v. Goldberg,* 401 F.2d 644, 647–48 (2d Cir.1968), *cert. denied,* 393 U.S. 1099, 89 S.Ct. 895, 21 L.Ed.2d 790 (1969).

■ There is no merit to defendant's objection to the prosecution on the *re-direct* examination of Scalia to the government's promises to him of leniency or immunity. Nor is there any merit to defendant's objection to the prosecution's use against the defendant of documents and the like referring to "Dom." From the total evidence the jury could reasonably infer that the reference was to Dominick Baccollo, the defendant-appellant.

We turn to the defendant's appeal against his conviction on the conspiracy count.

Of course, the defendant raises with respect to that count all the points he has raised with respect to his conviction on the substantive counts; and we conclude that as to the conspiracy count no less than the substantive count those points are without merit.

■ Nor do we see any merit in the defendant's argument that his conviction on the conspiracy count is otherwise flawed. The defendant does not allege that there is absent evidence sufficient to prove that the defendant was a party to the conspiracy alleged in count one. Nor does he suggest that there was a fault in the judge's instruction that the defendant could be convicted on that count *only* if the particular conspiracy there charged was proved. What the defendant argues is that there was a "spill-over" within the meaning of that term as used in *United States v. Kelly,*

349 F.2d 720 (2d Cir.1965), *cert. denied,* 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966). It is contended that the evidence before the jury was adequate to permit an inference that there were several conspiracies in violation of 18 U.S.C. § 371 and it is possible that evidence as to other conspiracies, as well as to the charged conspiracy, was used by the jury as a basis of their verdict. That is not even a plausible argument. On the evidence before it the jury could well have concluded that there was only one conspiracy, not the numerous and varied conspiracies posited by the defendant's argument, and that the defendant shared the purposes of all the alleged co-conspirators at every level of the conspiracy. Hence there is no basis for our even reciting the "spill-over" doctrine, its limitations, and its implications. The defendant's argument with respect to the conspiracy count has not even a trace of plausibility.

*Affirmed.*