**UNITED STATES of America, Appellee,**

v.

**Alphonse PERSICO, Defendant-Appellant.**

**No. 988, Docket 87–1545.**

United States Court of Appeals, Second Circuit.

Argued April 19, 1988.

Decided Aug. 4, 1988.

Judd Burstein, New York City, for defendant-appellant.

Edward A. McDonald, Attorney-in-Charge, U.S. Dept. of Justice, Organized Crime Strike Force, E.D.N.Y., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y., of counsel), for appellee.

Before FEINBERG, Chief Judge, and MESKILL and PIERCE, Circuit Judges.

MESKILL, Circuit Judge:

In 1980, defendant-appellant Alphonse Persico and co-defendant Michael Bolino were tried before the United States District Court for the Eastern District of New York, Weinstein, J. The indictment against them charged that they conspired to make an extortionate extension of credit in violation of 18 U.S.C. § 892 (1982) (count one), conspired to collect an extension of credit by extortionate means in violation of 18 U.S.C. § 894 (1982) (count two), and collected an extension of credit by extortionate means in violation of 18 U.S.C. §§ 2, 894 (1982) (count three). Both defendants were convicted on all three counts.

In this appeal, Persico challenges a single evidentiary ruling and the proportionality of his sentence under the Eighth Amendment. For the reasons that follow, we affirm.

## BACKGROUND

We summarize only the facts relevant to the issues raised on appeal. In March 1976 Persico and Bolino lent $10,000 to Joseph Cantalupo, an FBI undercover informant and small time career criminal. Cantalupo already had several outstanding debts to loansharks. It is unclear whether Persico and Bolino understood that the cash was for Cantalupo's own use, or whether Cantalupo obtained the loan by misrepresenting to Persico and Bolino that it was actually for a certain Edelman. Apparently it was also possible that Cantalupo initially obtained the money for Edelman but kept it for himself when Edelman decided that he did not need it after all. In any event, Persico and Bolino looked to Cantalupo for payments and he was often late.

The government's case rested on the defendants' efforts to collect the loan. Can-

talupo wore a recording device to tape numerous conversations with Bolino about the loan. The tapes revealed that they often discussed Cantalupo's inability to make payments and the consequences of his failure to do so. Cantalupo also testified that he met Persico and Bolino on April 22, 1977, at the Diplomat Social Club in Brooklyn, where Persico beat him up for failing to make payments. No tape recording was made of this incident, however.

The principal issue at trial was the use of extortionate means to enforce Cantalupo's repayment schedule. Persico in effect conceded lending the money to him at usurious rates, but contended that the beating was administered in connection with another matter. According to Persico, he was angry with Cantalupo for using Persico's name in an unrelated scheme to extort money from one Wasserman (the Wasserman extortion).

To establish that his displeasure with Cantalupo was related to the Wasserman extortion rather than the loan, Persico offered the testimony of Cantalupo's father, Anthony. Anthony Cantalupo would have testified that he spoke to Persico some time after April 22, 1977, and that Persico said he had beaten Cantalupo for using Persico's name in connection with the Wasserman extortion. Judge Weinstein sustained the government's objection to this line of questioning, however, ruling that the conversation was inadmissible hearsay. Tr. 333. He rejected defense counsel's theory that the conversation was admissible under Fed.R.Evid. 803(3) to prove Persico's state of mind with respect to the beating. *Id.*

The jury convicted both defendants on all three counts. Bolino was sentenced in August 1980 to five years imprisonment. During the sentencing proceeding in June 1980, however, Persico jumped bail and remained a fugitive until he was recaptured in West Hartford, Connecticut, in November 1987. He was then returned to the Eastern District for sentencing, which was assigned to Judge Platt after Judge Weinstein recused himself. On December 18, 1987, Judge Platt sentenced Persico to prison terms of five years on count one and twenty years on count three. He also imposed a suspended twenty year term on count two, with a five year term of probation on count two to run consecutively with the prison term imposed on the other counts.

This appeal followed.

## DISCUSSION

### I.

Persico asserts only one trial error in this appeal. He argues that Judge Weinstein erred in refusing to allow Anthony Cantalupo to testify about Persico's alleged statement explaining the reason for the beating of Joseph Cantalupo. As an initial matter, however, we must decide whether we should even consider Persico's challenge to the court's evidentiary ruling in light of Persico's bail jumping after conviction but before sentencing and his seven year fugitive status.

■ There is no constitutional right to appeal a criminal conviction. *Abney v. United States,* 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977). It is well settled that we have authority to dismiss an appeal when a convicted defendant becomes a fugitive while an appeal is pending and is not recaptured. *See Molinaro v. New Jersey,* 396 U.S. 365, 366, 90 S.Ct. 498, 499, 24 L.Ed.2d 586 (1970) (per curiam); *United States v. Sperling,* 506 F.2d 1323, 1345 n. 33 (2d Cir.1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975). Indeed, "[d]isposition by dismissal of pending appeals of escaped prisoners is a longstanding and established principle of American law." *Estelle v. Dorrough,* 420 U.S. 534, 537, 95 S.Ct. 1173, 1175, 43 L.Ed. 2d 377 (1975) (per curiam). In *Molinaro,* the Supreme Court explained that "such an escape ... disentitles the defendant to call upon the resources of the Court for determination of his claims." 396 U.S. at 366, 90 S.Ct. at 498–99. This "disentitlement" is an equitable principle. *See United States v. Sharpe,* 470 U.S. 675, 681 n. 2, 105 S.Ct. 1568, 1573 n. 2, 84 L.Ed.2d 605 (1985).

Courts have identified four considerations that support dismissal in such circumstances. First, a decision respecting a fugitive is effectively unenforceable because the fugitive is beyond the control of the court. *See Barker v. Jones,* 668 F.2d 154, 155 (2d Cir.1982); *see also Estelle,* 420 U.S. at 543, 95 S.Ct. at 1178 (Stewart, J., dissenting). A corollary to this consideration is that the defendant who flees during the pendency of an appeal has "arrogated to himself the right not to respond to an unfavorable decision." *See United States v. Puzzanghera,* 820 F.2d 25, 27 (1st Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 237, 98 L.Ed.2d 195 (1987). Second, loss of appellate review is appropriate because a fugitive flouts the judicial process by escaping. *See id.* at 26; *United States v. London,* 723 F.2d 1538, 1539 (11th Cir.), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2684, 81 L.Ed.2d 878 (1984); *id.* at 1540 (Johnson, J., dissenting). *Cf. Hussein v. INS,* 817 F.2d 63, 63 (9th Cir.1986) (per curiam) (escape is "inconsistent with the pursuit of judicial remedies"); *Ali v. Sims,* 788 F.2d 954, 959 (3d Cir.1986) (fugitive demonstrates "disrespect for the legal processes"); *In re Stern,* 249 F.2d 720, 722 (2d Cir.1957) (per curiam) (dismissing appeal of convicted contemnors whose conduct constituted "an undisputed, studied, and successful attempt to render the court powerless to enforce its decree"), *cert. denied,* 357 U.S. 919, 78 S.Ct. 1360, 2 L.Ed.2d 1364 (1958). Third, a rule of dismissal has the salutary effects of discouraging escape and promoting the efficient operation of appellate courts. *See Estelle,* 420 U.S. at 537, 95 S.Ct. at 1175; *London,* 723 F.2d at 1540 (Johnson, J., dissenting). *Cf. Ali,* 788 F.2d at 959 (noting that "[p]ractical concerns" make it "unreasonable" for court to devote its limited resources to litigants who "blatantly disregard[ ]" procedure by fleeing). Fourth, the delay occasioned by the period of a defendant's flight can prejudice the prosecution should a new trial be ordered after a successful appeal. *See United States v. Baccollo,* 725 F.2d 170, 172 (2d Cir.1983).

The instant case differs in two respects from *Molinaro* and certain of the cases that have followed it. First, Persico absconded before sentencing, not while appeal was pending. Second, he was not at large while the appeal was before us. Persico urges us to hold that a convicted defendant who flees and is recaptured prior to sentencing does not forfeit the right to appeal trial errors. The government contends that the better view is that of the Eleventh Circuit, which has held that a defendant "waives his right to appeal from the conviction" in such circumstances. *See United States v. Holmes,* 680 F.2d 1372, 1373 (11th Cir.1982) (per curiam), *cert. denied,* 460 U.S. 1015, 103 S.Ct. 1259, 75 L.Ed.2d 486 (1983). *Cf. London,* 723 F.2d at 1539 (flight during trial constitutes waiver of right to appeal trial errors). In *Baccollo,* we confronted a similar situation without deciding "whether an appellate court has inherent power to deny an appeal on the ground that *before* the district court entered its judgment the would-be appellant both *absconded* from the district court and *was returned* to that court." 725 F.2d at 172. We held instead that even if we had such power, we had discretion to decline to exercise it and dispose of the "plainly frivolous" appeal on the merits. *Id.*

Although we have discretion to reach the merits in an appropriate case, *see id.,* the considerations that support the *Molinaro* line of decisions provide compelling reasons for declining to consider trial errors asserted by a defendant who absconds after conviction and is recaptured before sentencing. We conclude that in the circumstances of this case, we should exercise our discretion to decline to reach the merits of the claimed trial error.

Our conclusion is not affected by Persico's recapture before bringing his appeal. Admittedly, this circumstance eliminates the argument that dismissal is appropriate because the fugitive is beyond the power of the court. But a fugitive deserves no credit for the recapture that brings him back before the court. Furthermore, the Supreme Court has held that there is no constitutional defect in a policy of dismissing the appeals of fugitive defendants even *after* their recapture. *See Estelle,* 420 U.S.

at 534–36, 95 S.Ct. at 1173–75. Thus, it is clear that we *may* dismiss a fugitive's appeal even after recapture. *See also Puzzanghera,* 820 F.2d at 26–27.

We also believe that the other three factors underlying the *Molinaro* rule weigh against consideration of trial errors asserted by defendants who flee after conviction but before sentencing. Such defendants demonstrate disrespect for the judicial process that is arguably even greater than that shown by defendants who defer flight until after filing appeals. *Cf. London,* 723 F.2d at 1539 (flight during trial is "more aggravating" than flight after conviction). Moreover, a policy of declining to consider former fugitives' claims will tend to discourage escape and promote the orderly operation of the judicial processes within which defendants should press their claims. Finally, the possibility of prejudice to the prosecution—inuring to the benefit of the fugitive—is an especially significant factor where, as here, a defendant remains a fugitive for an extended period. It would be unconscionable to allow such a defendant to benefit from the delay by forcing the government to reprosecute him long after memories have dimmed and evidence has been lost.

Persico nevertheless urges us to disregard his escape on the theory that the district court can punish him for fleeing. This argument is unpersuasive. It is not inherently unfair to subject an escaped defendant to *both* prosecution for escape *and* loss of appellate review of trial errors. Indeed, by subjecting escapees to both sanctions, we intend to make flight a less attractive option.

Accordingly, we hold that by jumping bail and remaining a fugitive for seven years Persico in effect waived his right to have this Court review the evidentiary ruling in question.

## II.

■ Although Persico cannot obtain review of trial errors, his escape does not disentitle him from seeking review of proceedings that have taken place since his return to custody. *Cf. London,* 723 F.2d

at 1539 (defendant who flees during trial, and thereby waives right to appeal from *conviction,* can appeal *sentence* imposed after return). We therefore turn to his Eighth Amendment argument.

Persico argues that his sentence was unconstitutionally disproportionate to the severity of his offense. The thrust of his argument is simply that the prison term imposed by the district court was excessive in comparison with (1) the penalty imposed on co-defendant Bolino, and (2) sentences imposed on other defendants convicted under the same statutes. He particularly stresses that Bolino, convicted of the same three counts, was sentenced to five years in prison whereas Persico received a twenty-five year prison term with five years of probation.

■ Under the Eighth Amendment, "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983). *See also United States v. Ortiz,* 742 F.2d 712, 714 (2d Cir.), *cert. denied,* 469 U.S. 1075, 105 S.Ct. 573, 83 L.Ed.2d 513 (1984). But because the decision of a sentencing judge is entitled to substantial deference, "a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." *Solem,* 463 U.S. at 290 n. 16, 103 S.Ct. at 3009 n. 16; *United States v. Bonnet,* 769 F.2d 68, 71 (2d Cir.1985); *Ortiz,* 742 F.2d at 714. Moreover, it is settled that a sentencing court has "broad discretion to mete out penalties at or below the statutory maximum." *Bonnet,* 769 F.2d at 71. Thus, "[w]hen a defendant's sentence falls within the statutory range, it will not be set aside on appeal absent extraordinary circumstances...." *United States v. DiTommaso,* 817 F.2d 201, 217 (2d Cir.1987).

■ Against this background, Persico's proportionality challenge is unavailing. Although he received a substantial term of imprisonment, the combination of prison and probation that the district court imposed fell well below the maximum allowed

by the relevant statutes. The court could have imposed as much as sixty years of imprisonment—twenty years on *each* of the three counts on which he was convicted —and fines totalling $30,000. *See* 18 U.S. C. § 892(a) (count one); 18 U.S.C. § 894(a) (counts two and three).[1] *Cf. Bonnet,* 769 F.2d at 71 (rejecting proportionality argument without further analysis after observing that sentence fell within statutory range).

*Solem* also holds that "a court's proportionality analysis ... should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." 463 U.S. at 292, 103 S.Ct. at 3010. Persico contends that consideration of these factors compels the conclusion that his sentence violates the Eighth Amendment.

We disagree. The first of the *Solem* factors does not support Persico's argument. By providing for twenty year maximum prison terms, Congress itself has spoken on the gravity of the loansharking and conspiracy offenses that Persico committed. We hesitate to conclude that penalties within the maximum defined by Congress are unconstitutionally harsh, especially since Persico does not contend that the statutes themselves are unconstitutional in providing for such penalties. Moreover, a heavy sentence was justified by considerations other than the convictions at issue here. The sentencing court is free to consider "a wide range of information concerning a defendant's background in arriving at an appropriate sentence." *United States v. Romano,* 825 F.2d 725, 728 (2d Cir.1987). At the sentencing hearing, Judge Platt noted that Persico was "a man with a very serious prior record" who had been convicted "on a very serious charge." He added that Persico's flight did not "add anything to his credit." J.App. at 112. As the government pointed out, Persico's record included a 1951 homicide conviction for

which he spent eighteen years in prison. Furthermore, the government informed the district court that Persico had been a major figure in the Colombo organized crime family since his release from prison. *See id.* at 110; *cf. United States v. Persico,* 832 F.2d 705, 708 (2d Cir.1987) (describing government's allegation that Persico was "a trusted adviser and an initiate member of the Family"), *cert. denied,* —— U.S. ——, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988). Persico did not contest these allegations at sentencing and does not deny them here. Nor does he argue that the district court should not have taken them into consideration in sentencing him. Considering the nature of the convictions and Persico's background, the sentence he received was not excessive.

■ Under the second of the *Solem* criteria, Persico could have argued that his sentence was excessive in comparison with sentences imposed on other criminals in the Eastern District. Instead, however, he makes the remarkable assertion that "there is no need to compare [his] sentence to other cases in the Eastern District" because we can compare it to the sentence imposed on co-defendant Bolino for the same offenses. Br. of Appellant at 26. Even if this is a proper interpretation of *Solem*—and we do not suggest that it is—comparison of the two sentences does not help Persico. The extrinsic factors that support a heavy sentence for Persico, specifically his prior record and his position of responsibility in the Colombo Family, are lacking with respect to Bolino. Moreover, proof at trial suggested that Persico was Bolino's superior in their loansharking activities. Under these circumstances, we conclude that there is no constitutional significance to the disparity between the sentences imposed on Persico and Bolino.

Nor does the final *Solem* factor support Persico's argument. Even if his sentence was "among the harshest" imposed nationwide under these statutes, *see* Br. of Appellant at 29, the factors supporting imposition of a substantial sentence lead to the conclusion that his sentence was proper.

---

1. Persico does not contend that there was any constitutional defect in the imposition of the maximum $10,000 fine on each of the three counts.

Accordingly, we conclude that Persico's sentence was not constitutionally disproportionate. There are no extraordinary circumstances here that warrant departure from the usual rule that a sentence within statutory limits is constitutionally valid. On the contrary, the only extraordinary circumstances in this case support the sentence imposed by the district court.

## CONCLUSION

For the foregoing reasons, we affirm Persico's conviction and sentence in all respects.