JOANOS, Judge.
Nancy Elizabeth Gurican appeals her conviction and sentence for trafficking in cocaine in an amount in excess of twenty-eight grams. The issue on appeal is whether the trial court erred in failing to allow Gurican the final statement during closing arguments to the jury. In addition, the state has filed a motion to dismiss the appeal, urging that this court adopt the federal “escape rule” as pronounced by the Eleventh Circuit Court of Appeals in United States v. Holmes, 680 F.2d 1372 (11th Cir.1982), cert. denied, 460 U.S. 1015, 103 S.Ct. 1259, 75 L.Ed.2d 486 (1983). We reverse in regard to the issue raised on appeal, deny the motion to dismiss, and certify the questions raised by the respective subjects as questions of great public importance. Art. V., § 3(b)(4), Fla. Const. (1980).
The record reflects that Gurican became involved in what proved to be a sting operation at the request of a close friend, Jenny Ramirez. A confidential informant who had known Ramirez and her family for many years, gave Ramirez’s telephone number to an undercover officer as someone who could arrange a cocaine purchase. After several attempts, the undercover officer contacted Ramirez by telephone. Later, the officer met Ramirez at a bar. At that time Ramirez furnished a sample of cocaine, and the two arranged a second meeting to complete the proposed transaction.
According to Ramirez’s testimony, Billy Lister, the confidential informant, had been urging her to arrange a cocaine purchase for his girl friend. Ramirez said she refused Lister’s requests on many occasions. However, Lister was aware that Ramirez’s daughter suffered from chronic and painful pancreatitis, and knew also that Ramirez needed money for her daughter’s surgery. Lister persuaded Ramirez that the drug deal would finance her daughter’s medical care. Ramirez confided in her friend, Nancy Gurican, the appellant in the instant case. Gurican advised Ramirez not to get involved in a drug deal, and to stay away from Billy Lister. Ramirez insisted she needed the money for her daughter’s surgery. She said she asked Gurican to assist in the drug transaction, because Gurican was a close and trusted friend. Ramirez further testified that initially Gurican refused to participate, but Ramirez persuaded her to do so.
After one aborted meeting, Ramirez again established contact with the undercover officer at a lounge where the transaction was to be completed. Ramirez told the officer that someone was bringing the cocaine to the bar. A short time later, Gurican arrived. Ramirez and Gurican conferred in low tones which were inaudible to the undercover officer, then Ramirez *977 told the officer that they would make the exchange in the ladies’ room. The officer entered one stall, and Ramirez and Gurican entered the adjacent stall. Ramirez passed the cocaine under the partition to the officer, and the officer placed the money for the deal in Gurican’s hand, which was extended under the partition. The officer then left the ladies’ room and signalled back-up officers, one of whom entered and arrested Ramirez and Gurican.
Ramirez and Gurican were tried jointly, and the same lawyer represented both co-defendants. Ramirez’s theory of defense was entrapment, predicated on the confidential informant’s knowledge that she was susceptible to dealing in drugs due to her need for money for her daughter’s medical care. To that end, she testified in her own behalf, and presented the testimony of the physician who had treated her daughter several times on an emergency basis, as well as the testimony of her daughter, and of family friends. Gurican put on no defense.
The trial concluded June 5, 1984. Defense counsel sought and was denied the final argument to the jury on Gurican’s behalf. A mistrial was declared with regard to Ramirez, and a guilty verdict was rendered with regard to Gurican. Gurican remained free on bond until sentencing, which originally was set for August 1, 1984. Sentencing actually took place on December 12, 1988, in excess of four years later. Although the record before this court contains no information concerning the delay in sentencing, the state’s motion for dismissal represents that Gurican absconded from the jurisdiction of the circuit court to avoid sentencing. Gurican’s response to the dismissal motion acknowledges that she did indeed abscond, but states that she voluntarily resubmitted herself to the court’s jurisdiction.
On December 12, 1988, the trial court sentenced Gurican to a guidelines sentence of four years, the sentence to include the three year mandatory minimum term. See § 893.135(l)(b)l., Fla.Stat. (1983). Guri-can’s notice of appeal was filed timely. On April 24, 1989, some three to four months later, the state filed its motion to dismiss the appeal.
In seeking dismissal, the state stresses that the long delay would be extremely prejudicial to the state, in the event a new trial is ordered. The state asks this court to apply the reasoning of the federal “escape rule” as it is explicated in United States v. Holmes. In Holmes, the court held that a defendant who flees after conviction, but before sentencing, has waived the right to appeal unless he can demonstrate that his absence was due to matters beyond his control. In the alternative, the state suggests that we certify the question to the Florida Supreme Court as a question of great public importance. Guri-can acknowledges that the state’s argument is an accurate reflection of the reasoning of the federal courts, but notes that no Florida court has applied the rule in circumstances such as those presented in this case, i.e., where one found guilty of a criminal offense absconded before sentencing and before filing a notice of appeal.
As the state contends, the federal courts have extrapolated the reasoning set forth in Molinaro v. New Jersey, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970), thereby extending the traditional escape rule, which provides for dismissal of an appeal of one who flees the jurisdiction of the court after filing a notice of appeal. Under recent federal cases, a subsequent appeal may be dismissed if the person fled the jurisdiction of the court before sentencing and before filing a notice of appeal. See, e.g., United States v. London, 723 F.2d 1538, 1539 (11th Cir.), cert. denied, 467 U.S. 1228, 104 S.Ct. 2684, 81 L.Ed.2d 878 (1984); United States v. Holmes, 680 F.2d 1372 (11th Cir. 1982), cert. denied, 460 U.S. 1015, 103 S.Ct. 1259, 75 L.Ed.2d 486 (1983); United States v. Persico, 853 F.2d 134 (2d Cir.1988); United States v. Puzzanghera, 820 F.2d 25, 27 (1st Cir.), cert. denied, 484 U.S. 900, 108 S.Ct. 237, 98 L.Ed.2d 195 (1987).
In Holmes, as in the instant case, the defendant failed to appear for sentencing. Two years later, he was apprehended and returned to Georgia, where the District Court sentenced him to seventeen years *978 incarceration. Holmes appealed, and the government moved to dismiss on the ground that he had abandoned his right to an appeal by remaining a fugitive for two years. In support of dismissal, the government relied upon cases in which an appeal had been filed before the defendant became a fugitive from justice. Although Holmes fled before sentencing and thus before filing a notice of appeal, the government contended that the policy considerations of the cited cases justified dismissal in the attendant circumstances. The Eleventh Circuit agreed, relying particularly on the rationale recited in Molinaro v. New Jersey.[1]
Our research has revealed no instance in which a Florida court ruled that a defendant abandons his right to appeal if he flees the jurisdiction before sentencing, and before filing a notice of appeal. Historically, when Florida courts have declined to process such appeals, it has been because the respective defendants were beyond the jurisdiction of the court. For example, in Mitchell v. State, 294 So.2d 395 (Fla. 1st DCA 1974), after conviction and while his appeal was pending, Mitchell escaped. While Mitchell was still at large, the state filed a motion to dismiss, which was granted. After his apprehension, Mitchell sought reinstatement of the appeal. The court held that by escaping and thereby rendering himself not amenable to the orders of the court, he was deemed to have abandoned his appeal. Therefore, the prior order dismissing the appeal was proper. 294 So.2d at 397. Similarly, in Decree v. State, 180 So.2d 667 (Fla. 1st DCA 1965), Decree’s attorney filed a motion to dismiss the appeal without prejudice, on the ground that Decree had escaped and was unable to confer with his attorney. The motion to dismiss was granted as an exercise of the court’s discretion.
However, in Marshall v. State, 344 So.2d 646 (Fla. 2d DCA), cert. denied, 353 So.2d 679 (Fla.1977), as in the instant case, the state’s motion to dismiss was not made until the escapee was back in custody. [Now] Justice Grimes, in writing for the court, observed that the unique feature of the case was that the appellant was back within the jurisdiction of the court, albeit involuntarily, when the motion to dismiss was considered. 344 So.2d at 647. After a review of the relevant case law, the court held:
Our Florida Constitution guaranteed convicted persons of the right of appeal, ... Moreover, our legislature has established escape as a separate crime for which a person can receive a sentence of up to fifteen years. In view of the foregoing and the fact that the return of the appellant to the court’s jurisdiction has undercut the historical premise upon which the appeals of escapees have been traditionally dismissed, the motion to dismiss this appeal is denied.
344 So.2d at 648. By the same token, in Brown v. State, 388 So.2d 586, 587 (Fla. 5th DCA 1980), the court concluded that—
because appellant is in custody [after an escape] under the jurisdiction of this court and subject to the mandate of this court, we would not be wasting our time in reviewing the case. ... The dismissal of an appeal is not a recognized form of punishment for escape, nor should it be without legislation ...
The federal courts, in discussing the “escape rule” in the context of a notice of appeal filed years after conviction, have expressed concern that the government would be extremely prejudiced by the delay, in the event there is a reversal and remand for new trial. See Holmes, 680 F.2d at 1374. On the other hand, Florida courts addressing this issue have been *979 guided by the court’s power to compel compliance with its rulings, and with the right to an appeal guaranteed by the Florida Constitution. Because it is not the province of this court to initiate a new rule with respect to the escape rule and the right of appeal under the Florida Constitution, we deny the motion to dismiss the appeal.
The issue raised in this appeal concerns the rule that “a defendant offering no testimony in his own behalf, except his own, shall be entitled to the concluding argument before the jury.” Fla.R.Crim.P. 3.250. In Faulk v. State, 104 So.2d 519 (Fla.1958), in tracing the history of the rule, the court held that the right is a substantial procedural right which cannot be denied merely because the defendant happens to be represented by the same counsel who represents a co-defendant. The court further held that denial of this vested procedural right constitutes reversible error. 104 So.2d at 523. In Terwilliger v. State, 535 So.2d 346, 348 (Fla. 1st DCA 1988), this court observed that—
[a] substantial body of case law recognizes that a statute or rule of procedure which confers upon the accused the right to conclude an argument is a substantial procedural right, the denial of which constitutes reversible error, notwithstanding that the state’s evidence may be more than adequate to support a verdict of guilty.
See, e.g., Gordon v. State, 104 So.2d 524 (Fla.1958); Birge v. State, 92 So.2d 819 (Fla.1957); Hart v. State, 526 So.2d 124 (Fla. 5th DCA 1988); Dampier v. State, 336 So.2d 683 (Fla. 2d DCA 1976); Raysor v. State, 272 So.2d 867 (Fla. 4th DCA 1973). Although we are fully cognizant of the settled state of this body of law, we consider that the instant case presents a scenario possibly susceptible to application of a harmless error analysis. It is in this spirit that we certify the question of applicability of a harmless error analysis to cases such as this where the defendant’s right to the concluding argument before the jury was denied improperly.
In summary, we decline the state’s invitation to apply the federal escape rule in the circumstances of this case. In considering the relevant case law, we perceive a distinction between one who escapes after sentencing but before the appeal process is complete, and one who flees the courts jurisdiction before adjudication of guilt and sentencing, and thus before filing a notice of appeal. At the same time, we recognize that reversal for new trial after a long delay in cases such as this is extremely prejudicial to the state, notwithstanding the substantive nature of the right of a defendant to closing argument when no testimony has been offered in his or her behalf. Therefore, we certify the following questions to the Florida Supreme Court as questions of great public importance:
Should Florida’s appellate courts apply the federal escape rule in which the court, upon proper motion, will dismiss an appeal of an accused who has fled the jurisdiction before sentencing, and hence before filing a notice of appeal, even though the accused is back within the court’s jurisdiction when the motion to dismiss is filed?
Should Florida’s appellate courts apply a harmless error analysis where a defendant has been wrongfully denied the right to the last argument before the jury?
Accordingly, the state’s motion to dismiss the appeal is denied, the denial of Gurican’s right to the concluding argument before the jury is reversed, and the cause is remanded for a new trial.
BARFIELD, J., concurs.
BOOTH, J., dissents with opinion.

. Although Molinaro concerned an escape after sentencing, the Eleventh Circuit in Holmes found the following reasoning equally persuasive whether the defendant fled before or after sentencing:
No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims.
Holmes, 680 F.2d at 1374, quoting from Molinaro, 396 U.S. at 366, 90 S.Ct. at 498-499.