788 F.2d 954
 5 Fed.R.Serv.3d 852
 Ishmael Muslim ALI, Appellee in 85-3073, Cross-Appellant in 85-3143,
v.
Rudolph SIMS, Edwin Potter, Richard Schraeder, James Daniel
and Brenda Blyden.
Appeal of Rudolph SIMS, Director, Bureau of Corrections,
Edwin Potter, Warden, Richard Schraeder, Committer Chairman,
James Daniel, Committee Member and Brenda Blyden, Committee
Member, Appellants in 85-3073, Cross-Appellees in 85- 3143.
 Nos. 85-3073, 85-3143.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 3, 1985.
Decided April 21, 1986.
 
 Benjamin A. Currence (argued), Pallme & Mitchell, St. Thomas, Virgin Islands, for appellee/cross-appellant.
 Cornelius Evans (argued), Dept. of Law, Christiansted, St. Croix, Virgin Islands, for appellants/cross-appellees.
 Before HUNTER, GARTH and BECKER, Circuit Judges.
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 These are cross-appeals from the judgment of the district court of the Virgin Islands awarding damages to the plaintiff, a prison inmate, for the violation of his due process rights; the defendants appeal the finding of liability, while plaintiff's appeal concerns the amount of the damages. Defendants' appeal presents the question of the propriety of the district court's imposition of sanctions under Fed.R.Civ.P. 37 that led to a grant of partial summary judgment in favor of plaintiff on liability; the partial summary judgment was an important basis for the jury's award of damages.
 
 
 2
 We hold that the district court's sanctions order was an abuse of discretion. Because the sanctions order led to a finding of liability, we vacate the judgment against defendants. In the ordinary course we would remand the case to the district court for a new trial. However, this case presents a special problem in that regard because plaintiff, Ishmael Muslim Ali, is a fugitive from justice.[1] We therefore must decide whether Ali is entitled to proceed with a new trial in view of his fugitive status. For the reasons that follow we conclude that he is not.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 3
 On November 2, 1979, Ali, then a prisoner in the custody of the Virgin Islands Bureau of Corrections, was placed in solitary confinement ("lockdown") on the grounds that he had disrupted institutional security. He was not given a hearing prior to his confinement, and remained in solitary confinement for nineteen days before he received a hearing. On November 20, a disciplinary hearing was held, at which Ali was found guilty of disrupting the institution and was sentenced to ninety more days in solitary confinement.
 
 
 4
 On October 29, 1980, acting pro se, Ali filed a complaint in the District Court of the Virgin Islands alleging that five prison officials had infringed his due process rights in violation of 42 U.S.C. Sec. 1983. The complaint alleged due process violations both in the initial lockdown without a hearing and in the sentence of ninety days' lockdown following the hearing. Ali sought monetary damages against three of the defendants, a declaratory judgment that all five defendants had violated his constitutional rights, and an injunction prohibiting future discrimination against him. Some defendants answered on December 16, the others on December 24.
 
 
 5
 The docket sheet suggests that there was no activity in this case from January, 1981 to June, 1983, and the record offers no explanation for this long period of inactivity. In June, 1983, trial was scheduled for February, 1984. The trial date was continued, however, and on January 26, 1984, Ali, still acting pro se, filed and served upon defendants a demand for production of documents, and on February 21, filed and served several interrogatories. Defendants did not respond to these discovery requests. On May 31, 1984, a United States Magistrate, to whom the matter had apparently been referred, ordered a response to plaintiff's discovery requests within 15 days; however, the order was not complied with.
 
 
 6
 While the record is unclear as to the precise events during this time period, it appears that defendants, all public officials, who for some reason had been represented by private counsel, were in the process of shifting to representation by the attorney general's office. On January 30, 1984, Albert Sheen, who then represented the three appellants, moved for a continuance (the trial was then scheduled for February 6) stating that at the time he undertook representation of defendants, "it was anticipated that the Office of the Attorney General would have been substituted in [my] stead, prior to trial.... [W]ithin 15 days of today's date, counsel will either secure substitution through the office of the Attorney General, or file whatever motions may be appropriate." On August 7, the district court approved the replacement of Sheen by the attorney general's office.
 
 
 7
 On October 9, 1984, the district court, sua sponte, and pursuant to Fed.R.Civ.P. 37(b), entered an order that "the factual allegations of plaintiff's complaint shall be deemed admitted." The entire articulated grounds of the sanctions order was defendants having "brazenly ignored" the magistrate's May 31 order to respond promptly to plaintiff's discovery requests. Based on the fact that the material allegations of plaintiff's complaint were deemed admitted, the district court granted summary judgment in Ali's favor with respect to the charge that the initial lockdown violated Ali's due process rights. The court did not grant summary judgment with respect to the claim that the lengthy lockdown following the hearing violated due process.
 
 
 8
 The trial finally commenced on December 27, 1984, and was completed on December 28. By this time, Ali was represented by counsel. The jury was given separate verdict forms with respect to the three defendants against whom monetary damages were sought.[2] The forms informed the jury that the court had already determined that defendants had violated Ali's due process rights in placing him in lockdown without a hearing for the initial twenty days, and asked the jury to determine whether defendants violated Ali's due process rights by keeping him in lockdown for ninety days following the November 10 hearing. The jury found each of the three defendants liable on that count as well. The verdict forms required the jury to determine damages with respect to each of the three defendants. The jury listed on each defendant's form liability of $2,250 for compensatory damages and $1,750 for punitive damages. It was not entirely clear from the jury forms, however, whether the verdict was intended to award $4,000 total, or $4,000 against each defendant.
 
 
 9
 On January 18, 1985 the district court entered a judgment that interpreted the jury forms as stating that the total liability for the three defendants was $4,000 (rather than $4,000 liability for each defendant). Defendants appealed from this judgment on January 21. On February 19, the district court entered an amended judgment which assessed damages in the same amount. See supra note 2. On February 22, Ali appealed from this judgment, maintaining that the district court improperly interpreted the jury verdict and asserting that the jury awarded $4,000 against each defendant.[3]II. PROPRIETY OF THE GRANT OF PARTIAL SUMMARY JUDGMENT
 
 
 10
 Defendants request a new trial primarily on the grounds that the judge improperly ordered Rule 37(b) sanctions that resulted in the grant of partial summary judgment in Ali's favor.[4] It is well-settled that a court has discretion to issue sanctions for failure to comply with discovery orders. Fed.R.Civ.P. 37(b)(2). See National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). The Rule 37(b)(2) sanctions include:
 
 
 11
 A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.
 
 
 12
 B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;
 
 
 13
 C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.
 
 
 14
 The district court's discretion is not unlimited, however. Two recent cases in this circuit set forth the factors to be considered in evaluating the propriety of Rule 37 sanctions. Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863 (3d Cir.1984); Scarborough v. Eubanks, 747 F.2d 871 (3d Cir.1984). These factors are: 1) the extent of the party's personal responsibility; 2) a history of dilatoriness; 3) whether the attorney's or party's conduct was willful or in bad faith; 4) meritoriousness of the claim (i.e., whether the allegations in the pleadings support recovery); 5) prejudice to the other party; and 6) appropriateness of alternative sanctions.
 
 
 15
 In determining whether a district court has abused its discretion in dismissing a complaint or in refusing to lift a default, we will be guided by the manner in which the court balanced the Poulis factors and whether the record supports its findings. While in the case at bar the court did not render a judgment by default, its ruling that the factual allegations of plaintiff's complaint be deemed admitted resulted in a grant of summary judgment establishing defendants' liability on one count. Under the circumstances, we believe this situation to require a Poulis balance and an on-the-record articulation of the basis for the sanctions.
 
 
 16
 The district court did not make a Poulis balancing. However, even had it done so, the result would be unchanged for analysis of the Poulis factors reveals that the sanctions order is unsupportable. Defendants' failure to answer interrogatories appears to have resulted from their being caught between counsel for a period of time. There is no indication of the personal responsibility of any party or that any party or attorney's conduct was willful or in bad faith. Even if there was inexcusable delay, the other Poulis factors suggest that the severe sanction was inappropriate. There was no history of dilatoriness; defendants' answer to plaintiff's complaint, the only other occasion requiring a response from defendants, was timely. As for prejudice to Ali, this was not a case in which delays caused "irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Scarborough, 747 F.2d at 876. Indeed, the existence of a two and a half year hiatus in the litigation during which Ali apparently took no action to move it forward strongly mitigates any prejudice claim. In addition, it seems likely that less severe sanctions were available. See Titus v. Mercedes Benz of North America, 695 F.2d 746, 749 n. 6 (3d Cir.1982).
 
 
 17
 In Poulis, we established the strong presumption against sanctions that decide the issues of a case:
 
 
 18
 Although sanctions are a necessary part of any court system, we are concerned that the recent preoccupation with sanctions and the use of dismissal as a necessary "weapon" in the trial court's "arsenal" may be contributing to or effecting an atmosphere in which the meritorious claims or defenses of innocent parties are no longer the central issue.... We reiterate what we have said on numerous occasions: that dismissals with prejudice or defaults are drastic sanctions, termed "extreme" by the Supreme Court, National Hockey League, 427 U.S. at 643 [96 S.Ct. at 2781], and are to be reserved for comparable cases.
 
 
 19
 747 F.2d at 867-68. In National Hockey League, the Court upheld a dismissal because, on the basis of an extensive record, it found "flagrant bad faith" on the part of the sanctioned party. There is no such record here. The district court's lone remark that defendants had "brazenly ignored" the court's May 31 order is insufficient to justify the order. See In re MacMeekin, 722 F.2d 32, 35 (3d Cir.1983) (description of counsel's conduct as delay which constitutes 'inexcusable neglect' and as a 'conscious failure to comply' with discovery, held insufficient to justify dismissal of action).
 
 
 20
 It is clear, based upon the foregoing, that the sanction imposed by the district court was an abuse of discretion. Therefore, the partial summary judgment that flowed from the sanctions order and the ultimate money judgment that followed must be set aside.[5]
 
 
 21
 III. PLAINTIFF'S FUGITIVE STATUS AND A NEW TRIAL
 
 
 22
 Because we have vacated the finding of liability against defendants, we need not reach the interesting question posed by Ali's appeal with respect to damages. Cf. Watts v. Laurent, 774 F.2d 168 (7th Cir.1985) (court resolved similar ambiguity of jury verdict by giving plaintiff option of accepting the damages award or taking a new trial on damages and risking a lower award). Since, in the ordinary course, we would remand the matter for a new trial, we must consider whether Ali's fugitive status (which is not in dispute) precludes him from seeking a new trial on the issue of liability.
 
 
 23
 In Molinaro v. New Jersey, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970), the Supreme Court dismissed a defendant's appeal from a criminal conviction because, following his conviction, he had fled. The court reasoned that his fugitive status "disentitles [him] to call upon the resources of the court for determination of his claims." Id. at 366, 90 S.Ct. at 499. This court has had occasion to follow the Molinaro doctrine, Government of the Virgin Islands v. James, 621 F.2d 588 (3d Cir.1980), and has extended it to dismiss the appeal from a deportation order of an individual who had fled. Arana v. United States Immigration & Naturalization, 673 F.2d 75 (3d Cir.1982). Several other courts have extended Molinaro to dismiss suits arising in a slightly different context: cases in which convicts who had brought civil actions related to their criminal convictions had fled. Conforte v. Commissioner, 692 F.2d 587 (9th Cir.1982) (individual convicted of tax evasion appealed tax court's assessment; suit dismissed because he had fled following his conviction); Doyle v. United States Department of Justice, 668 F.2d 1365 (D.C.Cir.1981) (fugitive's suit seeking documents under the Freedom of Information Act related to his conviction dismissed because of his fugitive status), cert. denied 455 U.S. 1002, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982); Broadway v. City of Montgomery, Alabama, 530 F.2d 657 (5th Cir.1976) (fugitive's suit alleging illegal wiretap that led to his arrest dismissed).
 
 
 24
 In addition, one court has extended this doctrine to a situation in which the fugitive fled not after a criminal conviction but after court-martial charges were preferred against him. Brin v. Marsh, 596 F.Supp. 1007 (D.D.C.1984) (fugitive's suit for retirement benefits and discharge from army dismissed). See also Johnson v. Laird, 432 F.2d 77 (9th Cir.1970) (a pre-Molinaro case in which a habeas corpus petitioner, a service man seeking release from the Army as a conscientious objector, appealed the dismissal of his complaint but fled and departed the country after oral argument on appeal; Court of Appeals ruled that it would dismiss the appeal unless he surrendered himself within 30 days).
 
 
 25
 In the case at bar we must decide whether to apply the rationale of Molinaro to preclude a new civil trial when the plaintiff fled immediately after the first trial. As noted, the articulated basis of Molinaro is that the fugitive from justice has demonstrated such disrespect for the legal processes that he has no right to call upon the court to adjudicate his claim. Practical concerns are congruent with this consideration. Particularly in this age of overcrowded dockets and court backlogs, it is unreasonable to expect a court to expend its scarce resources on one who has blatantly disregarded the court's procedures. In Arana we noted that nothing in the Supreme Court's opinion suggests that the Molinaro rule is limited to the criminal context.
 
 
 26
 We recognize that Molinaro itself and some of its progeny may be explained as holding that the courts will not entertain the cause of one who will respond to a judgment only if it is favorable. See United States v. Swigart, 490 F.2d 914, 915 (10th Cir.1973) ("any court has the inherent discretion to refuse to hear the claim of a litigant who is willing to comply with the court's decree only if it is favorable"); Arana, 673 F.2d at 77 (quoting Swigart). A plaintiff, of course, is not called upon to respond to a court's judgment. However, several of the cases following Molinaro were akin to this case, in that the fugitive was a plaintiff in the suit which was dismissed on account of his fugitive status. See, e.g., Doyle, supra. At all events, the principles of Molinaro intersect with the principles underlying Fed.R.Civ.P. 37 & 41, which render a party's misconduct a basis for the dismissal of his case. See supra pp. 957-958. Indeed, the cases involving dismissals under the Federal Rules generally entail conduct far less egregious than a flight from justice. Thus, the jurisprudence upholding such sanctions as necessary and proper in an era of court backlogs dovetails with the Molinaro doctrine. Cf. Eash v. Riggins Trucking, Inc., 757 F.2d 557 (3d Cir.1985) (in banc ) (it is within the "inherent powers" of the court to take such actions as are necessary for the effective administration of the judicial system).
 
 
 27
 In sum, the concerns that animate Molinaro as well as the principles that undergird Rule 37 and Rule 41 sanctions, dictate that Ali, whose contempt for justice was manifest in the egregious act of skyjacking a plane and endangering innocent lives in a flight from justice, not be awarded a new trial.IV. CONCLUSION
 
 
 28
 For the reasons set forth above, Ali's appeal at No. 85-3143 will be dismissed and the judgment of the district court which the Government of the Virgin Islands challenged on appeal at No. 85-3073 will be vacated and the case remanded to the district court with instructions to dismiss Ali's action with prejudice. This mandate shall issue forthwith.
 
 
 
 [1]
 Accounts in major newspapers have reported that on December 31, 1984, while being transported by Virgin Islands Correctional Officials from St. Thomas to New York for return to the federal penitentiary at Lewisburg, Pennsylvania (following the trial that gave rise to this appeal), plaintiff Ishmael Muslim Ali obtained a gun in a lavatory and skyjacked an American Airlines plane to Cuba, where he deplaned and has apparently remained. Ali was serving a life sentence for his role in the notorious Fountain Valley massacre, see Government of the Virgin Islands v. Gereau, 502 F.2d 914 (3d Cir.1974). Ali is listed in the caption of that case as Ishmael Labeet, which was his name at that time
 
 
 [2]
 It appears from the record that the jury was given no instruction, and made no determination, with respect to the other defendants. Indeed, after the trial, on January 18, the district court entered an order setting forth the finding of liability and amount of damages with respect to the three defendants against whom damages were sought, but omitting mention of the other two defendants. When the Court of Appeals Clerk's office brought the defect in this order to the parties' attention, the district court filed an amended judgment on February 19 which reiterated the terms of the January 18 order, but added a declaratory judgment against all defendants stating that they had violated plaintiff's due process rights. The judgment further stated that plaintiff's request for injunctive relief had become moot
 Only those defendants against whom monetary damages were awarded are involved in this appeal.
 
 
 [3]
 There is no jurisdictional problem occasioned by the two appeals coming from the two different judgments. Plaintiff's appeal was timely filed after the only final order from the district court--the February 22 amended judgment. While defendants have appealed only from the non-final January 19 order, we have jurisdiction over their claim because the premature appeal was "cured" by the February 22 amended final judgment. See Cape May Greene, Inc. v. Warren, 698 F.2d 179, 184-85 (3d Cir.1983)
 
 
 [4]
 At oral argument, Ali's counsel suggested that the grant of partial summary judgment may not have been a result of the sanctions but simply the application of Barnes v. Government of the Virgin Islands, 415 F.Supp. 1218 (D.V.I.1976) to undisputed facts of this case. Indeed, the district court alluded to Barnes in its short order granting partial summary judgment. Any doubt, however, that the grant of partial summary judgment resulted largely from the Rule 37 sanctions is dispelled by the transcript of the pre-trial conference. At one point the court said:
 [H]aving deemed the material allegation of the complaint admitted, it seems to me that insofar as there is the contention that he was--that the plaintiff was deprived of due process by reason of the 90 day lock down before he was accorded a hearing, I will say that--I would grant summary judgment with respect to that aspect of the case with respect to liability.
 Defendants also seek a new trial because of a pre-trial ruling by the district court preventing the introduction of Ali's criminal record into evidence. In view of our disposition of the case, we need not reach this question.
 
 
 [5]
 The fact that the sanctions resulted in summary judgment only with respect to the claim of violation of due process occasioned by the initial lockdown without a hearing, and that the jury arrived at a finding of liability with respect to the continued lockdown, does not alter this conclusion. At the pre-trial conference, the district court acknowledged that the jury's determination on the second count would likely be influenced by the grant of summary judgment on the first count. Thus, the instruction to the jury that liability had already been determined by the court with respect to the first count taints its finding with respect to the second count