**STATE of Missouri, Respondent,**

v.

**David Glenn VOYLES, Appellant.**

No. 59195.

Missouri Court of Appeals, Eastern District, Division Four.

Jan. 28, 1992.

**144**

Emmett D. Queener, Columbia, for appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

AHRENS, Judge.

Defendant, David Glenn Voyles, was convicted by a jury of one count of felony driving while intoxicated, third offense, in violation of § 577.010 RSMo 1986; one count of misdemeanor driving while license is revoked in violation of § 302.321 RSMo 1986; and one count of misdemeanor failure to drive on the right side of the roadway in violation of § 304.015 RSMo 1986. The trial court sentenced defendant to a term of five years' imprisonment on the

charge of felony driving while intoxicated and two terms of fifteen days' imprisonment each on the misdemeanor charges, to run concurrently with the five-year term. Defendant appeals from the driving while intoxicated conviction. We dismiss the appeal.

Viewed in a light most favorable to the verdict, the evidence at trial revealed the following facts. On September 8, 1988, Officer John Monroe of the Union Police Department observed a pickup truck travelling westbound on Highway 50 in Franklin County. The vehicle was travelling down the center of the two westbound lanes at a speed of twenty to twenty-five miles per hour in a forty miles-per-hour zone. The officer followed the vehicle and observed it make a wide turn onto an adjoining street. Monroe activated his red lights and attempted to initiate a traffic stop, but the truck continued down the street at a slow rate of speed. Monroe flashed his driver's side spotlight on the vehicle's back window, and the driver pulled over. The officer observed that a man was driving. As Monroe watched, however, the driver and his female passenger switched places. Monroe's view was clear and unobstructed.

Monroe approached the vehicle and asked defendant, the driver, to exit the passenger side. Defendant complied but protested that he wasn't the driver, staggering and swaying as he walked to the back of the truck. Defendant stated he did not have his driver's license with him when Monroe asked him to produce it. Monroe detected a strong odor of intoxicants and asked defendant if he had been drinking. Defendant stated that he had consumed two beers and that Monroe would never be able to prove defendant had been driving.

Defendant submitted to three field sobriety tests, all of which he failed. Monroe placed defendant under arrest for driving while intoxicated and contacted a second officer to transport the female passenger to the station because, in Monroe's opinion, she was too intoxicated to drive. Defendant was transported to the police station and advised of his rights concerning a

breathalyzer test, to which he refused to submit.

At trial, defendant presented the testimony of his fiancee, Virginia Schmidt, the woman who had accompanied him on the night of his arrest. Schmidt testified that she had been the driver of the vehicle. Schmidt further testified that a mural was displayed on the vehicle's back window at the time of the arrest, making it difficult to see through the window. Over the objection of defendant, the state elicited testimony from Schmidt that she had been recently convicted of driving with excessive blood alcohol content.

The jury found defendant guilty on all three counts. After receiving the verdicts, the court instructed defendant to return to the court for sentencing on March 2, 1990. Defendant failed to appear on that date, and the court revoked his bond and directed that a capias warrant issue for his arrest. Defendant was located and extradited from Utah, returning to Franklin County on September 5, 1990. On September 9, 1990, defendant appeared for sentencing and admitted his failure to appear at the original sentencing.

On appeal, defendant contends the trial court erred in excluding the testimony of Virginia Schmidt's sons; limiting defendant's cross-examination of Officer Monroe; and permitting the state to cross-examine Schmidt, over the objection of defendant, regarding her prior convictions. The state contends defendant forfeited his right to appeal by failing to appear at sentencing and remaining at large for six months. We agree.

■ "The 'escape rule' operates to deny the right of appeal to one who, following a conviction, has attempted to escape justice." *State v. Wright,* 763 S.W.2d 167, 168 (Mo.App.1988). The rule has been applied to deny the right of appeal to defendants who, after conviction, willfully fail to appear for sentencing. *State v. Woods,* 812 S.W.2d 267, 268 (Mo.App.1991).

■ Although it is true that not every disappearance results in forfeiture of the right to appeal, *State v. Gillispie,* 790 S.W.2d 519, 520 (Mo.App.1990), we find nothing to distinguish the circumstances of defendant's disappearance from those in *Wright,* upon which the state relies. In *Wright,* the defendant was released on bond and failed to appear for sentencing, remaining at large for five and one-half months. Our Western District applied the escape rule and dismissed the defendant's appeal, concluding that the rule "preserves respect for the system of justice under which Ms. Wright was convicted and to which she now comes for relief from her conviction." *Wright,* 763 S.W.2d at 168–69. Such preservation was a more compelling reason to apply the rule, even assuming that the state's ability to present the case was not prejudiced by defendant's absence. *Id.* at 168.

We find the rationale of *Wright* persuasive. Further, the sole case upon which defendant relies, *Sinclair v. State,* 708 S.W.2d 333 (Mo.App.1986), is inapposite. In *Sinclair,* a movant for post-conviction relief attempted to escape from prison while the motion was pending in the trial court. The court dismissed the motion without an evidentiary hearing, finding that the movant, by attempting to escape, had "lost his standing" to bring the motion. Movant appealed, alleging the dismissal was improper. In defense of the dismissal, the state contended defendant's intent to escape forfeited his right to proceed. Rejecting this argument, the court stated that because defendant remained under the control of the court, the attempted escape was not a sufficient basis for the dismissal of his motion. *Id.* at 336.

*Sinclair* involved an attempt to escape, and its reasoning and holding are limited to that situation. *Woods,* 812 S.W.2d at 268. Further, the *Sinclair* court relied on only one rationale for application of the escape rule: a court's need for control over the defendant. *Sinclair,* 708 S.W.2d at 335–36.[1] As in *Wright,* we find the "control"

---

1. By stating that its decision not to apply the rule might have been different if the defendant's

attempted escape had substantially hindered the trial court's decision, the court intimated it con-

rationale inapplicable to the instant case, since defendant has been returned to custody. *See Wright,* 763 S.W.2d at 168.

We are unpersuaded by defendant's contention that a substantive review of the case would "foster greater respect for the rule of law by application of objective criteria, not simplistic, technical rules which ignore the merit of an individual case." We do not view the escape rule as a "simplistic, technical" device used to avoid substantive consideration of cases, and we fail to see how respect for the law would be fostered by affording one who abused the judicial system the right to seek its protection.

We are unpersuaded by defendant's contention that he did not "knowingly" fail to appear for sentencing. Defendant was personally present in court and instructed to appear for sentencing on the date specified. He failed to appear and remained a fugitive for six months before being located in Utah and extradited to Missouri. As in *State v. Smith,* 815 S.W.2d 74, 76 (Mo. App.1991), "[w]e find no reason to lessen the effect of defendant's conduct here." The rationale of *State v. Wright* is applied to this case, and the appeal is dismissed.

SMITH, P.J., and KAROHL, J., concur.

sidered whether administrative problems caused by defendant's absence would justify a finding that defendant had forfeited his right to appeal. *Sinclair v. State,* 708 S.W.2d 333, 336

(Mo.App.1986). However, the court did not discuss this rationale and, at any rate, found no circumstances justifying its application to the case.