**Rory D. NITCHER, Appellant,**

v.

**George THOMPSON, et al., Respondents.**

**No. WD 45256.**

Missouri Court of Appeals,
Western District.

June 16, 1992.

Rory D. Nitcher, pro se.

William L. Webster, Atty. Gen., June Striegel Doughty, Asst. Atty. Gen., Jefferson City, for respondents.

Before SHANGLER, P.J., and KENNEDY and SMART, JJ.

SHANGLER, Judge.

Rory D. Nitcher is a prisoner in the custody of the Missouri Department of Corrections. He is serving a forty-five year sentence for aiding the escape of his former cellmate, Bill Herron, while Nitcher was on parole. *State v. Nitcher*, 744 S.W.2d 468 (Mo.App.1987); *see Herron v. Whiteside*, 782 S.W.2d 414, 415 (Mo.App. 1989) (for a summary of that event).

In 1987, Nitcher brought suit for damages against three prison employees for the negligent loss of his personal property. In 1988, the trial court dismissed the suit on the grounds that the Nitcher petition was frivolous or malicious and lacked facts that entitled him to relief. On appeal, this court reversed the dismissal and remanded the cause for further action. *Nitcher v. Thompson*, 777 S.W.2d 626 (Mo.App.1989). After remand, the prison employees moved for summary judgment, which was then granted in 1991. Nitcher then brought this appeal.

The basis for the prison employees' motion for summary judgment was involvement of Nitcher in two prison escapes during the pendency of his civil action now on appeal. Exhibits appended to the motion proved that Nitcher had attempted escape on May 14, 1987, and had escaped on May 5, 1988.

The 1987 escape attempt occurred when Nitcher was being returned to the prison after an appearance in civil rights litigation which he had instituted in federal court. Nitcher removed his leg irons, overcame a guard, and took off down a side street. The guard chased, grappled and recaptured Nitcher. The guard suffered a serious shoulder injury in the struggle. *Nitcher v. Does*, 956 F.2d 796, 798 (8th Cir.1992).

In 1988, Nitcher escaped from the Jasper County Jail where he was housed pending other court proceedings. He absconded by climbing and jumping over a fence in the exercise yard. A jail guard who witnessed the event ran after Nitcher, but to no avail. Nitcher remained at large until his recapture by a deputy sheriff at a service station on the following day.

In suggestions in opposition to summary judgment, Nitcher did not deny the escapes, but emphasized that he had not been criminally prosecuted for either incident.

This case presents an issue new in this jurisdiction, whether a prisoner who escapes from incarceration should be permitted to maintain civil litigation pending in our state courts at the time of the escape.

■ We determine that a prisoner's escape from incarceration and involuntary surrender provide a discretionary basis for summary dismissal of his civil litigation then pending. Our holding is prompted by numerous cogent concerns and basic premises. Prison escape is a danger to the public. It manifests disdain for our system of justice and rejection of its processes. It works to disentitle the prisoner from calling upon the court and its resources for litigation of private grievances. Our holding promotes sound policy to discourage escapes and protect the integrity of the legal system.

First and above all, escape constitutes a dangerous, deliberate act. Any escape from prison or custody, or attempt to escape, necessarily imperils not only the prisoner, but also prison personnel, other prisoners, and the public. The dangerousness of escape is intensified by a prisoner who refuses to surrender and requires recapture.

■ Second, by escape, the prisoner flouts our entire system of justice, the very system which provides a forum for litigating personal claims. The judicial system allows a prisoner to initiate private actions without payment of filing fees, and grants the prisoner access to the same resources available to ordinary citizens to pursue actionable claims, including service of process, discovery, motion practice, trial, and appeal. The prison system may not unduly interfere with a prisoner's right to access to the courts. It is required to implement that right in numerous ways by allowing possession of legal papers, preparation of court filings, and consultation of legal authorities, and by providing transportation to court proceedings. A prisoner who escapes manifests intent to perma-

nently separate from the control of the prison authorities and the jurisdiction of the courts, and thereby, from the entire legal process. While at large an escapee forsakes any realistic possibility of continued private litigation in the courts repudiated by the escape. The escapee's involuntary return to the system by recapture provides insufficient justification for allowing pursuit of private legal matters in our state courts.

Third, under the doctrine enunciated in *Molinaro v. New Jersey*, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970), escape disentitles the escapee from calling upon the resources of the court. In *Molinaro*, the United States Supreme Court ruled that an appellate court could dismiss the appeal from a criminal conviction if the defendant had become a fugitive from justice. The Court acknowledged that the escape of the defendant did not strip the underlying case of its adjudicable character, but concluded that the flight from justice "disentitle[d] the defendant to call upon the resources of the Court for determination of his claims." *Id.* at 365–66, 90 S.Ct. at 499.

*Molinaro* involved the criminal appeal of a fugitive who had remained at large during the pendency of the appeal. Extensions of *Molinaro* in the federal circuit courts of appeal resulted in the "fugitive from justice rule." That rule has been applied to dismiss criminal and quasi-criminal appeals for flight occurring at any time during custody and at any stage of the judicial process, and even when the fugitive has been returned to custody. *See, e.g., Buckley v. Lockhart*, 892 F.2d 715, 720 n. 5 (8th Cir.1989); *United States v. Parrish*, 887 F.2d 1107, 1108 (D.C.Cir.1989); *United States v. Persico*, 853 F.2d 134, 137 (2nd Cir.1988).

The rationale of *Molinaro* has been applied to the civil cases of fugitives from justice. *See e.g., Clark v. James*, 794 F.2d 595 (11th Cir.1986); *Ali v. Sims*, 788 F.2d 954 (3d Cir.1986). In *Clark*, the prisoner escaped from custody and remained at large at the time of the hearing of his civil rights action. The federal court of appeals upheld the dismissal of the prisoner's action against prison authorities. *Clark v. James*, 794 F.2d at 596. His involuntary return by recapture, even though it occurred before his civil case was dismissed, provided no justification to allow resumption of the litigation. *Id.* at 597. In *Ali*, supra, the court denied a new trial in a civil rights case to a prisoner who had escaped by skyjacking a plane to Cuba while being transported to the penitentiary after the initial civil trial. *Ali* relied on the *Molinaro* rationale, and noted that nothing in that decision limited the disentitlement doctrine to the criminal context. *Ali*, 788 F.2d at 959. *Ali* also observed: "in this age of overcrowded dockets and court backlogs, it is unreasonable to expect a court to expend its scarce resources on one who has blatantly disregarded the court's procedures." *Id.*

Missouri appellate courts have cited the *Molinaro* premise to support and develop the escape rule. *See, e.g., State v. Smith*, 815 S.W.2d 74, 75 (Mo.App.1991); *State v. Branch*, 811 S.W.2d 11, 12 (Mo.App.1991); *State v. Wright*, 763 S.W.2d 167, 169 (Mo. App.1988). The escape rule operates to deny the right of appeal to one who, following conviction, attempted to escape justice. *State v. Voyles*, 823 S.W.2d 143, 144 (Mo. App.1992). The escape rule has been applied to the dismissal of postconviction proceedings, *Stradford v. State*, 787 S.W.2d 832, 833 (Mo.App.1990), without regard to whether the movant was convicted of the crime of escape. *State v. Schleeper*, 806 S.W.2d 459, 460 (Mo.App.1991).

*Molinaro* and its successors are prominent in the decision of the court in *Perko v. Bowers*, 945 F.2d 1038 (8th Cir.1991); *cert. denied,* —— U.S. ——, 112 S.Ct. 1482, 117 L.Ed.2d 624 (1992). The arguments on appeal of both Nitcher and the prison employees are structured around the facts and the holding of *Perko*. In that case, a Missouri inmate instituted a § 1983 action in federal court against prison officials and medical personnel. Perko actively pursued his claim after completing his prison sentence. He was subsequently arrested, convicted of another crime, and sentenced to a second term of imprisonment. During the second

incarceration, Perko continued to litigate his federal action. He escaped from state custody, remained at large two days before his recapture, and was subsequently convicted of escape. After his return to confinement, Perko proceeded with discovery in his § 1983 action. However, the district court dismissed that civil action on the basis of the fugitive from justice rule. The Eighth Circuit reversed.

*Perko*, 945 F.2d at 1039–40, reviewed the development of the fugitive from justice rule from *Molinaro*, 396 U.S. 365, 90 S.Ct. 498. It considered the applicability of the rule to the civil suits of criminal defendants. In the process, the court determined that many of the concerns raised by an escape in the criminal context also arise in the civil context. *Perko*, 945 F.2d at 1040. Such concerns include the inability of the court to force the fugitive to respond in the event of an adverse judgment and the apparent lack of respect by the fugitive for the judicial system. *Id.* The court concluded that the fugitive from justice rule may be selectively applied in the civil context. *Id.* In reversing the dismissal, the court determined that the rule should not be applied in a *per se* manner. *Id.* Under the *Perko* holding, a trial court exercises discretion to determine whether to dismiss a criminal defendant's civil case based upon the circumstances of each individual case. *Id.*

■ In evaluating the dismissal of Perko's civil case, the court identified five factors which militate against the application of the fugitive from justice rule:

(1) the escape and recapture did not inconvenience the court's schedule;

(2) the escape lasted only a short period;

(3) dismissing the appeal could punish the escapee twice for the same crime;

(4) the civil claim is completely separate from the sentence being served at the time of the escape;

(5) the delay by the defendants in the civil action in moving to dismiss prejudiced the escapee.

The first three factors are derived from *U.S. v. Snow*, 748 F.2d 928, 930 (4th Cir.1984), wherein the court exercised its discretion to allow the habeas corpus appeal of a recaptured fugitive to proceed. The Perko court added the fourth and fifth factors. *Perko*, 945 F.2d at 1040–41. The court found all the enumerated mitigating factors present and overruled the dismissal of Perko's civil suit. The court emphasized that the escape lasted less than three days, caused no disruption to the civil court proceeding, that his civil rights claim and escape arose from separate imprisonments, and that the four months' delay by the defendants to dismiss unfairly prejudiced Perko because both parties engaged in preparation for trial even after his recapture. *Id.*

Nitcher asserts that the trial court erred as a matter of law in the *per se* application of the escape rule to his civil case. He argues the *Perko* criteria that disfavor dismissal. He emphasizes that the May of 1987 "incident" was an attempted escape, and not an escape; that there is no inconvenience to the court to allow his appeal to go forward; that his civil case and the criminal sentence from which he escaped are separate matters; that the summary judgment motion was unduly tardy and that he was punished for the escapes by receiving conduct violations.

We accept the *Perko* conclusion that the fugitive from justice rule be applied as a rule of discretion, determined by the circumstances, as to whether the civil case of a criminal defendant escapee shall be dismissed. We reject, however, the rationale by which the court comes to that rule of discretion.

The criteria cited in *Perko* are illogical and disjointed, and conflict with the cogent concerns of public policy that escapes be discouraged and the integrity of the legal system be maintained. The first three factors in the *Perko* mitigation calculus are irrelevant to that sound public policy. The last two are even more remote. They do not, in any event, give real weight to the danger to the public that an escape entails. That an escape was of short duration does not relieve its dangerousness. That is why

it is the escape, not its duration, that operates to disentitle the prisoner from claiming the resources of the court under *Molinaro*. *Perko* also neglects to consider the involuntariness of the prisoner's return to custody. The escape constitutes a deliberate repudiation of the legal system. An escapee deserves no credit for the recapture that brings him back to the legal system. *Persico*, 853 F.2d at 137. That the civil court was not "inconvenienced" by the escape, a factor that *Perko* puts into the balance, or the fact of delay by the civil defendants, or want of "nexus" between the civil case and the criminal case, are of misguided significance. They overlook the escapee's disregard for the entire system of justice. *Molinaro*, 396 U.S. at 365–66, 90 S.Ct. at 499.

█ In the circumstances presented, especially, the *Perko* factors would not operate to set aside the summary dismissal of the Nitcher petition for negligent loss of personal property, even by the *Perko* criteria. The use of a court appearance in his civil rights action as the occasion to escape from prison heightens the irony, even absurdity, of the argument that Nitcher now makes that the civil action for damages which the summary judgment now precludes because of his escape from prison are separate matters that ought not to conclude each other.

There was no abuse by the trial court in the summary judgment of dismissal of the Nitcher petition for civil relief. The judgment is affirmed.

All concur.