James A. FLAHERTY, Plaintiff,

v.

**M.A. BRUDER & SONS, INC., Defendant.**

No. Civ.A. 98–5896.

United States District Court, E.D. Pennsylvania.

May 8, 2001.

David William Wolf, Law Offices of David W. Wolf, Philadelphia, PA, Louis Hockman, Upper Darby, PA, for plaintiff.

A. James Johnston, Post & Schell, P.C., Margret M. Hagar, Adrian R. King, Jr., Post & Schell, PC, Philadelphia, PA, for defendant.

### *MEMORANDUM AND ORDER*

ANGELL, United States Magistrate Judge.

### *I. Factual and Procedural Background:*

Presently before the court is Plaintiff's Motion for Sanctions pursuant to Federal Rules of Civil Procedure 37(a). In November of 1996, plaintiff, James Flaherty, after almost 30 years of employment, was terminated from his position as paint store manager at the Grays Avenue, Philadelphia store. He was 53 years old at the time of his termination. Plaintiff claims that his termination from employment at MAB Paints was in violation of the Age Discrimination in Employment Act and the American with Disabilities Act. Defendant claims that it did not discriminate on the basis of his age or disability in its termination of plaintiff's employment. Defendant contends that economic reasons, including poor financial performance at the Grays Avenue store, required the defendant to close that store, thus depriving

plaintiff of his job. Plaintiff also claims that the defendant had available several other jobs at other stores which were denied him and which were advertised and filled with younger individuals without disabilities. Plaintiff claims that defendant's "poor business" economic outlook defense is merely a pretext for discrimination, and he has sought discovery to help prove that contention for close to three years.

The basis for the instant motion dates back to March of 1999 when plaintiff propounded discovery requests upon defendant, seeking production of all federal and state tax returns for years 1995, 1996 and 1997. As a result of defendant's refusal to produce the tax documents, plaintiff sought Court intervention. Following a discovery conference, I Ordered the defendant to produce the contested tax returns. Defendant filed objections to this Court's October 14, 1999 Order. Subsequently, on March 6, 2000, Judge Reed issued an Order and Memorandum, affirming my October 14, 1999 Order, and Ordered the defendant to produce of all corporate tax returns with schedules for the years 1995, 1996 and 1997.

On March 9, 2000, defendant produced what plaintiff terms as incomplete copies of the tax returns. According to the plaintiff, defendant failed to produce (a) IRS forms 5471 for 1995 and 1996 and (b) IRS form K–1 schedules. On June 6, 2000, following a discovery conference, this court Ordered that defendant produce the K–1 schedules. This order was promptly objected to by defendant. On September 11, 2000, Judge Reed affirmed this Court's June 6, 2000 Order, finding that, after an independent review of the record, the information contained in the K–1 schedules is relevant as to whether or not the economic necessity defense is pretextual and bears upon the credibility and possible bias of defense witnesses including one or more decision makers. Judge Reed Ordered the defendant to produce K–1 schedules files as part of defendant's corporate tax returns for the years 1995, 1996 and 1997, plus unredacted or otherwise diminished copies of the state tax returns, by September 18th, 2000.

In his September 11th, 2000 Order, Judge Reed also assigned to this Court resolution of the issue of sanctions, if any, against the defendant in connection with these objections and enforcement of his Order.

On October 3, 2000, plaintiff's counsel wrote a letter requesting that this Court consider imposing sanctions stemming from MAB's failure to follow this Court's mandated objection procedure in connection with their filing objections to discovery orders and for failing to respond to plaintiff's third set of interrogatories. On December 22, 2000, plaintiff filed a motion for sanctions, this time seeking monetary sanctions and the entry of default judgment on issues of liability.

The thrust of plaintiffs' motion is to force the release of information, in the form of amended tax documents for 1995, details of the ensuing tax audit and deposition testimony related to these matters, which plaintiff claims is necessary to determine the validity of the defendant's economic outlook defense, as well as the overall credibility of MAB and its decision makers.

## II. Discussion

### A. Plaintiff's position:

Plaintiff seeks to show that MAB's failure to produce all the requested tax documents, specifically all of the K–1 schedules, is part of a systematic disregard for this Court's Orders, as well as an established pattern of discovery abuses. Plaintiff first learned of a discrepancy in defendant's K–1 schedules after receipt of defendant's K–1's were reviewed by plaintiff's identified accounting expert, Todd Benning, CPA. During Mr. Benning's detailed review, it was discovered that the schedule K–1's that were produced for the year 1995 were filed as "amended." However, the 1995 federal tax return Form 1120 produced pursuant to Judge Reed's March 6, 2000 Order were not amended. Mr. Benning explained that the amended K–1 forms had to have been filed with amended tax returns. The amended federal tax return (form 1120's) that MAB failed to produce bears a greater loss as compared with MAB's un-amended 1995 1120's. The withheld information shows that defendant's performance in 1996 (the year in which plaintiff

was terminated) was even more tremendously improved as compared to 1995. Accordingly, the plaintiff claims that the withheld information contradicts MAB's "poor business outlook" defense and, therefore, the inference must be that MAB willfully failed to produce this information in a manner designed to mislead the plaintiff and the Court. (*See* February 22, 2001 Hearing Transcript, at 18). Thus, Plaintiff claims that the defendant is in contempt of and has not complied with Judge Reed's March 6, 2000 Order.[1] Plaintiff argues that the sought after tax documents fall within the scope of Judge Reed's March 6, 2000 Order as well as the prior Orders of this Court. Plaintiff claims that MAB's inadvertent production of amended 1995 K–1 schedules was the only thing that has alerted him and the court that in 1995 MAB actually had three separate sets of federal tax returns signed, certified and submitted to the government for filing. (*See* February 22, 2001 Hearing Transcript, at 16). MAB's response also revealed, for the first time, that defendant was audited in connection with the two amended returns submitted in 1995. Plaintiff argues that the details of the existence of a tax audit and the subsequent withdrawal of the amended tax returns speaks directly to the credibility of MAB and its CFO. (See February 22, 2001 Hearing Transcript, at 19). Plaintiff submits that MAB intentionally failed to disclose the existence of the amended 1995 federal tax returns in order to hide the fact that an audit had occurred and that MAB's credibility hangs in the balance of these events. (See February 22, 2001 Hearing Transcript, at 19). Plaintiff argues that MAB's tax returns are relevant not only for purposes of testing the defendant's economic defense, but also for purposes of probing the credibility and bias of defendant and its witnesses.

Plaintiff further claims that he has been "irreparably prejudiced" by his inability to question MAB's CFO at his deposition about the tax audit and have his expert review and assess the withdrawn amended tax returns. Plaintiff alleges that he conducted various depositions and spent many hours with ex-

pert witnesses relying upon defendant's representations and was acting under the mistaken belief that MAB had complied with the Court's Orders. Plaintiff also claims that defendant's failure to produce the requested tax documents has resulted in substantial financial costs and prejudice to the plaintiff, not to mention the fact that he will have to re-depose Mr. James Bruder once the amended 1995 K–1's are produced.

Additionally, plaintiff contends that MAB failed to respond to plaintiff's third set of interrogatories in violation of the Court's August 16, 2000 Order. The August 16, 2000 Order stated, "counsel for the defendant, MAB, is ordered to respond to plaintiff's submitted [third set of] interrogatories." The Order also states that this Court would be available to resolve by telephone conference any bona fide disputes arising from defendant's good faith objections to the interrogatories. Plaintiff argues that defendant has no good faith objections to these interrogatories on the basis that: (1) because the interrogatories were served in April, any objections were waived by August when this Court was forced to Order defendant's response, and (2) defendant's failed to contact the Court with their objections as directed by this Court's August 16, 2000 Order. (*See* February 22, 2001 Hearing Transcript, at 8). Plaintiff thus describes defendant's behavior as "a complete derogation" of this Court's August 16, 2000 Order. (*See* February 22, 2001 Hearing Transcript, at 9).

Finally, plaintiff contends that MAB's has failed to produce James Bruder for a complete deposition, specifically to allow plaintiff the opportunity to depose Mr. Bruder concerning the amended tax returns.

### B. Defendant's Position:

MAB filed a response to Plaintiff's Motion for Sanctions on January 5, 2001. In its defense, MAB's counsel claims that the fact that they provided the plaintiff with an unamended 1995 federal tax return but with amended schedule K–1's accompanying that return is harmless error and is easily rectified. They claim that plaintiff's motion fails to identify any basis for sanctions because

---

1. Judge Reed's March 6, 2000 Order affirmed this court's October 14, 1999 Order.

there is no prejudice to plaintiff and MAB made a good faith production of K–1's in compliance with Judge Reed's September 11, 2000 Order.

Defendant has asserted three arguments in its defense. The first argument is that plaintiff has always had the correct 1995 corporate tax returns and therefore has not been prejudiced in any way. According to Defendant, plaintiff is concerned that he has been relying on 1995 federal tax returns for MAB which are unamended, while the corresponding K–1's are amended, indicating either the tax return or the K–1's are incorrect. MAB represents that the 1995 corporate tax returns in plaintiff's possession is the correct, final tax return for that year. MAB maintains that plaintiff has already had the opportunity to question MAB's CFO about these returns and that plaintiff's experts reviewed the correct, final tax return when formulating their opinions. MAB explains the confusion surrounding the K–1 issue as follows: MAB filed their first, original tax return with schedules in 1995, and later filed two amended tax returns with schedules. In the course of a tax audit, MAB agreed to withdraw the amended returns with schedules. The 1995 tax return produced to plaintiff is the first, original federal tax return for 1995 and is, therefore, the correct and final tax return for that year. Plaintiff has thus been relying on the correct tax return in his depositions and the preparation of expert reports. MAB further maintains that it has complied with its discovery obligations with respect to the production of the corporate tax returns and denies that it has failed to obey any Order of the Court.

Furthermore, MAB acknowledges that an error has been made with respect to the 1995 K–1 schedules produced on September 20, 2000, but submits that the error was inadvertent and understandable. Defendant argues that any failure to comply with Judge Reed's September 11, 2000 Order was substantially justified and that sanctions should not be imposed. Defendant further argues that plaintiff has not suffered irreparable prejudice because neither plaintiff's counsel nor his expert witnesses relied upon the K–1's in the course of deposition or expert discovery, including preparation of reports in this case. Defendant also claims that it has taken steps to correct this inadvertent error in that it will provide plaintiff the final K–1's for 1995.

MAB explains that the reason for the error in production of the wrong K–1's was because: (1) MAB has a confusing set of tax documents for 1995, a year in which it filed an original tax returns and two amended tax returns, the amended tax returns with schedules having been withdrawn; and (2) because the tax returns and the K–1's were not produced simultaneously in discovery in this case. MAB reiterates that it produced the correct 1995 tax return. At a later date, when retrieving K–1's pursuant to a Court Order, MAB inadvertently retrieved the 1995 K–1's last filed (the amended K–1's) rather than the K–1's filed with the original tax return.

In its third argument, MAB contends that this matter could have been resolved without Court intervention and that plaintiff's counsel could have tried to resolve it without resorting to motions. Defendants believe that they have satisfied Judge Reed's Orders dated March 6, 2000 and September 11, 2000 for the production of MAB's tax returns. MAB strongly contests the notion that they should be and were required to produce the withdrawn tax returns that are not on file with the IRS.

In regards to plaintiff's third set of interrogatories, MAB contends that these interrogatories are duplicated and expanded upon interrogatories in the second set in an attempt to circumvent this Court's decision narrowing the scope of plaintiff's second set of interrogatories. MAB contends that there was no information left to be produced in the third set of interrogatories that was not barred either because it exceeded the previously determined scope of discoverable information or because it was duplicative of information already produced. (See February 22, 2001 Hearing Transcript, at 56). Further, defendant's counsel argues that a bona fide dispute between parties arises only *after* the receiving party serves objections to an interrogatory and the other side reviews the objections before disagreeing with them. De-

fendant's counsel questions plaintiff's ability to understand the objections unless they are served on paper to plaintiff. (See February 22, 2001 Hearing Transcript, pp. 27, 53). Again, MAB claims plaintiff did not make a good faith effort to resolve this issue without court intervention.

Finally, with respect to the issue of producing James Bruder for a deposition, MAB contends that it has offered four separate occasions, during which Mr. Bruder could have been deposed but which were ultimately rejected by the plaintiff. MAB, however, remains willing to produce him. Defendant's counsel acknowledges that the volume of discovery disputes and motions far exceeds what is normal in this type of case, but strongly opposes plaintiff's suggestion that it is responsible for this avalanche of paperwork by violating a Court Order.

### C. The Standard for Imposing Sanctions Pursuant to Fed.Civ.Proc. 37:

■ It is a well-settled principle that a court has discretion to issue sanctions for failure to comply with discovery orders. *Ali v. Sims*, 788 F.2d 954, 957 (3d Cir.1986). F.R.C.P. Rule 37(a) provides, in relevant part that:

A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery . . .

(4) Expenses and Sanctions.

(A) If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's non-disclosure, response, or objection was substantially

justified, or that other circumstances make an award of expenses unjust.

F.R.C.P. Rule 37(a)(4)(A). In this case, there are no notice or procedural due process issues as the defendant was put on particularized notice of the grounds for the sanction under consideration when it was served with Plaintiff's Motion for Sanctions. All due process concerns have likewise been satisfied as the defendant was given a full and fair opportunity to be heard during the sanctions hearing on February 22, 2001.

■ The court's discretion, however, is not without limits. Several factors should be weighed when considering the propriety of Rule 37 sanctions. *Ali*, 788 F.2d at 957. Some of the factors to be considered include: (1) the extent of a party's personal responsibility; (2) a history of dilatoriness; (3) whether the attorney's conduct was willful and in bad faith, (4) the meritoriousness of the claim; (5) prejudice to the other party; and (6) appropriateness of alternative sanctions. *Scarborough v. Eubanks*, 747 F.2d 871 (3d Cir.1984); *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir.1984).

■ In the instant case, plaintiff has failed to demonstrated to the satisfaction of the Court the personal responsibility of the defendant or that MAB's or their attorneys' conduct was willful or in bad faith. Delays in the discovery process have usually been the result of objections pending before the Court. Although unnecessarily cumbersome, there has been no finding that these objections were filed in bad faith, as the record does not support such a conclusion. There is no finding in this case that the filing of objections constitutes an "abuse of ligation or misuse of the court's process." *Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 68 (3d Cir.1988), *cert. denied*, 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988). There has also been no prejudice identified in this motion in which delays caused "irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens of costs imposed on the opposing party." *Scarborough*, 747 F.2d at 876. Production of the amended tax forms, coupled with the opportunity to depose Mr. Bruder

on those matters, substantially obviates any prejudice that might have been incurred by plaintiff. There is little doubt that this case has endured a long and arduous history. It is inconceivable in this Court's experience that so simple a case has spawned eleven (11) discovery orders, unknown number of conferences, and three appealed discovery orders. Each party has attributed unflattering motives to the other throughout this torturous discovery process. However, I cannot find support in the record for the proposition that defendant's conduct was so contumacious or so flagrantly violative of federal or local rules or the Court's Orders as to warrant the sanctions requested by the plaintiff in this case. This Court reminds counsel that the Cannons of Professional Responsibility must be followed closely between counsel, between counsel and the Court, and between the parties in all phases of the litigation process. I will extend the discovery deadline for a final time solely for the purposes of Ordering the defendant to produce any and all outstanding tax documents, including amended returns and schedules, as well as to fully and completely answer plaintiff's third set of interrogatories. Counsel are to make every effort to achieve an orderly conclusion of discovery herein. Sanctions will be imposed on any party who fails to comply with this Court's Orders.

### ORDER

AND NOW, this 7th day of May 2001, upon consideration of Plaintiff's Motion for Sanctions, the Defendant's response thereto, and after conducting a Hearing on Plaintiff's Motion for Sanctions in the above-captioned matter, IT IS HEREBY **ORDERED** by the Court that:

1. Plaintiff's Motion for the Imposition of Monetary Sanctions is **DENIED.**

2. Pursuant to the Court's Orders of September 28th, 1999 [paragraph 3(c)], and October 14th, 1999, defendant MAB shall produce its corporate tax returns, including any amended returns and schedules, for the years 1995 through 1997, consistent with the confidentiality agreement between the parties. These documents shall be produced to the Plaintiff no later than **May 15, 2001.**

3. Defendant MAB shall respond fully and completely to Plaintiff's third set of interrogatories by **May 22, 2001.**

4. The deposition of James Bruder, Jr. is to be conducted no later than **Tuesday, May 22, 2001.**

